[Cite as *State v. Kleinholz*, 2015-Ohio-4280.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150276 |
| | | TRIAL NO. B-1401046 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| ERIC KLEINHOLZ, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 16, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Elizabeth Agar,* for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**FISCHER, Presiding Judge.**

{¶1}    Defendant-appellant Eric Kleinholz appeals the judgment of the Hamilton County Common Pleas Court revoking his community control and sentencing him to 18 months in prison.  He argues the trial court erred by failing to credit the 180 days he had spent on electronically monitored detention ("EMD") towards his prison sentence.  After reviewing R.C. 2967.191 and the applicable case law, we cannot conclude that Kleinholz's time on EMD constituted confinement.  We, therefore, affirm the trial court's judgment.

*Factual and Procedural Posture*

{¶2}    On April 1, 2014, Kleinholz pleaded guilty to domestic violence, a fourth-degree felony, in violation of R.C. 2919.25(A).  On April 17, 2014, the trial court sentenced Kleinholz to three years of community control with multiple conditions, including that Kleinholz serve 180 days in the River City Community Based Correctional Facility ("River City CBCF"), followed by 180 days of EMD.

{¶3}    On February 5, 2015, Kleinholz was charged with violating his community control. On February 12, 2015, the trial court found Kleinholz guilty of the violation, but continued him on community control with some additional conditions.  On April 6, 2015, Kleinholz was again charged with violating the terms of his community control.  Kleinholz had tested positive for opiates (heroin) on March 6, 2015, March 20, 2015, and April 3, 2015.  On April 8, 2015, Kleinholz pleaded no contest and the trial court found him guilty of the violations.  It revoked Kleinholz's community control and sentenced him to 18 months in prison.

{¶4}    At the sentencing hearing, Kleinholz asked the trial court to give him jail-time credit for the 180 days he had spent on EMD as a condition of his community control. The trial court asked Kleinholz if he had worked while he was on

community control.  Kleinholz told the court that he had worked at the Gold Star on Reading Road when he was in River City until about "three months I got out [sic], so September, October, November, up to December."  Kleinholz said he then "started painting.  And then [he] went to Bob Evans.  [He] went to the Bob Evans on Colerain in January.  [He] was there three and a half months."

{¶5}   The trial court credited Kleinholz with 223 days, which included the time he had spent in jail and the 180 days he had spent in the River City CBCF, but it declined to credit him with the 180 days he had spent on EMD.

### PostConviction Electronically Monitored Detention

{¶6}   In a single assignment of error, Kleinholz argues the trial court erred by failing to credit him with the 180 days he had spent on EMD.

{¶7}   R.C. 2967.191 provides:

The department of rehabilitation and correction shall reduce the stated prison term of a prisoner or, if the prisoner is serving a term for which there is parole eligibility, the minimum and maximum term or the parole eligibility date of the prisoner by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the prisoner's competence to stand trial or sanity, confinement while awaiting transportation to the place where the prisoner is to serve the prisoner's prison term, as determined by the sentencing court under division (B)(2)(g)(i) of section 2929.19 of the Revised Code, and confinement in a juvenile facility. The department of rehabilitation and correction also shall reduce the

3

stated prison term of a prisoner or, if the prisoner is serving a term for which there is parole eligibility, the minimum and maximum term or the parole eligibility date of the prisoner by the total number of days, if any, that the prisoner previously served in the custody of the department of rehabilitation and correction arising out of the offense for which the prisoner was convicted and sentenced.

{¶8} The term "confined" as used in R.C. 2967.191 is not defined in the Revised Code. Therefore, we examine case law, which has defined "confinement" for purposes of jail-time-credit statutes R.C. 2949.08(C)(1) and 2967.191.

{¶9} Kleinholz urges this court to follow *State v. Holmes*, 6th Dist. Lucas No. L-08-1127, 2008-Ohio-6804, ¶ 2-6, where the Sixth Appellate District held that a defendant should have been granted jail-time credit under R.C. 2949.08(C)(1) for his time on electronically monitored house arrest ("EMHA") that was completed during his community control. The Sixth District reasoned that because electronic monitoring constituted detention for purposes of an escape conviction, it should also warrant, in the interest of justice, credit as time served. *Id.* at ¶ 19.

{¶10} The state urges us, on the other hand, to follow a number of appellate districts, which have declined to treat EMHA and EMD, that is imposed as part of probation or community control, as confinement for jail-credit purposes. In *State v. Blankenship*, 192 Ohio App.3d 639, 2011-Ohio-1601, 949 N.E.2d 1087 (10th Dist.), the Tenth Appellate District held that a defendant, who had been convicted of a misdemeanor and placed on a 90 day term of EMHA, but was permitted to leave his home to go to work and anger-management treatment, was not entitled to confinement credit under R.C. 2949.08(C). The Tenth District acknowledged that some appellate districts had found "confinement" to be synonymous with detention,

but the court found it unnecessary to conclude whether the two terms were synonymous. *Id.* at ¶ 10, fn. 1. Instead, it focused on the Ohio Supreme Court's opinions in *State v. Nagle,* 23 Ohio St.3d 185, 492 N.E.2d 158 (1986), and *State v. Napier,* 93 Ohio St.3d 646, 758 N.E.2d 1127 (2001), which had evaluated the term "confinement" for jail-credit purposes.

{¶11} In *Nagle*, the Supreme Court examined a rehabilitative facility, and concluded that the time Nagle had spent in the rehabilitative facility, as a condition of his probation, was not sufficiently restrictive to constitute confinement for purpose of jail-time credit under R.C. 2949.08(C). *Nagle* at 186. Nagle had pleaded guilty to felonious assault. The trial court had imposed a suspended jail sentence, and had placed Nagle on conditional probation. One of conditions of his probation was to serve 18 months in a Texas rehabilitation facility near his father. Nagle voluntarily left the facility after 54 days, flew back to Ohio, and turned himself in at the local jail. Following a probation-revocation hearing, the trial court terminated Nagle's probation and reimposed the original sentence, but it did not credit the 54 days he had spent at the rehabilitation facility against his original sentence. *Id.* at 185.

{¶12} The Supreme Court, in reversing the court of appeals, which had credited Nagle for the time in the facility, looked at the examples of confinement set forth in R.C. 2949.08(C) to determine that Nagle had not been "confined" during his tenure at the facility. The court observed that under none of the statutory examples could the defendant leave official custody of his own volition. "In contrast, the rehabilitation facility imposed restrictions upon [Nagle's] freedom of action to the extent communications with family or friends were restricted or monitored. Yet, [his] freedom of movement had not been severely restrained." *Id.* at 187. He was free

5

to leave of his own volition, as shown by the fact that Nagle had voluntarily left the facility, even though his departure had constituted a violation of the conditions of his probation. *Id.* Thus, the Supreme Court concluded that the time Nagle had spent in the rehabilitative facility was not a form of "confinement" for purposes of credit for time-served under R.C. 2949.08(C). *Id.* at 188.

{¶13} In *Napier*, the Ohio Supreme Court addressed whether time in a community-based corrections facility ("CBCF") should be credited against prison time under R.C. 2967.191, since inmates have much greater opportunities to leave the facilities than those confined in prison or jail. Napier had pleaded guilty to felony drug possession and had been sentenced to three years of community-control sanctions, including evaluation and treatment at a residential CBCF. *Napier*, 90 Ohio St.3d at 649, 758 N.E.2d 1127. After Napier had violated his community-control sanctions, the trial court imposed an eight-month prison sentence. Napier claimed he was entitled to credit for 110 days spent at the CBCF. The trial court granted Napier credit for only 30 days at the facility when he had been in a "lockdown" status, and not permitted to leave the facility. *Id.* at 647.

{¶14} The Supreme Court reversed the trial court's decision, holding that Napier was entitled to credit for all the time he had spent at the facility. *Id.* at 648. In reaching this conclusion, the Supreme Court focused on its prior opinion in *State v. Snowde*r, 87 Ohio St.3d 335, 720 N.E.2d 909 (1999), where, in considering whether a CBCF was "confinement," it had looked to the definition of a CBCF, which "must be a secure facility that contains lockups and other measures sufficient to ensure the safety of the surrounding community." *Napier* at 648. The Supreme Court looked at the exact qualities of the facility, as well as the specific nature of Napier's experience at the facility, as compared to the experience of the defendant in

*Snowder,* to determine whether he had been sufficiently restricted so as to constitute "confinement." *Id.*

{¶15} The Supreme Court ruled that because a CBCF exercises effective control over the ability of the offender to leave the facility, and the facility is secured in such a way as to prevent offenders from entering the community without approval of the facility's managers, "all time served in a CBCF constitutes confinement for the purposes of R.C. 2967.191" even though the offender may be permitted to leave to participate in employment and other activities outside the CBCF. *Id.* at syllabus and 648. The court noted that even though Napier could leave the facility, after the "lockdown," his ability to leave was subject to requesting and securing permission from the staff by submitting a detailed written description of his travel plans, which included reporting when he was leaving the facility, where he planned to go, and when he planned to return. The Supreme Court concluded that because Napier was not free to "come and go as he wished," but was subject to the control of the staff regarding his personal liberties, he was "confined" for purposes of R.C. 2967.191. *Id.*

{¶16} In *Blankenship,* the Tenth Appellate District, drawing upon the Supreme Court's delineation of "confinement" in *Nagle* and *Napier*, looked to the order imposing EMHA. The court noted that the order had permitted Blankenship to leave his home for both anger-management treatment and employment. *Blankenship*, 192 Ohio App.3d 639, 2011-Ohio-1601, 949 N.E.2d 1087, at ¶ 16. It concluded that

> like the defendant in *Nagle*, Blankenship was apparently able to leave
> his home of his own volition because he must have done so to violate
> the terms of his EMHA. The fact that he faced possible consequences
> for choosing to violate his EMHA did not transform the EMHA into a

condition imposing 'such a restraint on his freedom of movement that he could not leave custody of his own volition.'

*Id.*, quoting *State v. Slager*, 10th Dist. Franklin No. 08AP-581, 2009-Ohio-1804, ¶ 20.

**{¶17}** In *State v. Tabor*, 5th Dist. Richland No. 111CA33, 2011-Ohio-3200, ¶ 18-19, the Fifth Appellate District, found the Tenth Appellate District's analysis in *Blankenship* persuasive, and held that a defendant, who had been convicted of a felony offense, was not entitled to credit for time spent on electronic monitoring as a condition of his community control, which required him to be home between the hours of 10:00 p.m. and 6:00 a.m.

**{¶18}** Likewise, in *State v. Williams*, 3d Dist. Hancock No. 5-11-26, 2011-Ohio-6698, the Third Appellate District declined to follow the Sixth Appellate District's opinion in *Holmes* and instead followed the Tenth District's opinion in *Blankenship*. It concluded that Williams, who had been convicted of possession of crack cocaine and sentenced to community control with 30 days of EMD as a part of his community control, was not entitled to time-served credit under R.C. 2967.191 because his movements were not so restricted so as to constitute confinement. *Id.* at ¶ 18. The court noted that the only restriction upon Williams's movement was that he had to "abide by curfew, which will be set out by the Adult Probation Officer." Absent this restriction, he had unfettered liberty to leave his house of his own volition. Thus, the Third District held that, consistent with *Nagle* and *Blankenship*, the defendant's movements under the terms of his electronic monitoring were not so severely restrained as to constitute confinement under R.C. 2949.08(C). *Id.* at ¶ 19.

**{¶19}** After reviewing the case law, we decline to follow the Sixth District's analysis in *Holmes*. Pursuant to the analysis of "confinement" articulated by the

Ohio Supreme Court in *Napier* and *Nagle*, the court must consider the circumstances surrounding the restraint of the defendant's physical movements without regard to whether the defendant's movements may constitute a violation of probation or community control. Thus, in determining whether a defendant has been confined for purposes of the award of jail-time credit, it is irrelevant whether he could be prosecuted for escape. We, therefore, agree with the Tenth, Fifth, and Third Appellate Districts, which have held that EMHA and EMD do not qualify as confinement for purposes of jail-time credit. Thus, the trial court properly concluded that Kleinholz was not entitled to additional jail-time credit for his time on EMD. We, therefore, overrule his sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**DEWINE** and **STAUTBERG, JJ.,** concur.

Please note:

The court has recorded its own entry this date.